**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CITY OF AURORA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 20 C 5337 |
| ) | |
| BS IRON, INC.; FOX VALLEY ) | |
| IRON AND METAL, LLC; ) | |
| ROBERT H. SWICKERT, SR., and ) | |
| ROBERT H. SWICKERT, JR., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

    The City of Aurora has sued BS Iron, Inc., Robert Swickert Sr., and Robert Swickert Jr. (collectively FV1), previous owners and operators of the Fox Valley Iron & Metal scrap metal recycling operation (the Site), and Fox Valley Iron and Metal, LLC (FV2), the current owner and operator of the Site, alleging environmental hazards and harm arising from operations at the Site. FV1 and FV2 have counterclaimed, alleging that the City has contributed to any environmental harm. The City has moved to dismiss the defendants' counterclaims for failure to state a claim.

    For background purposes, the Court begins with a summary of certain facts alleged in the City's complaint against FV1 and FV2. The Site, located at 637 North Broadway Avenue in Aurora, has conducted scrap metal recycling operations since 1933. According to the City, the Site includes locations where solid wastes, including contaminated stormwater and groundwater, have emanated onto adjacent properties, including the City-owned sewer and the Fox River. The City alleges that these

conditions "have caused and threaten to cause solid or hazardous wastes or hazardous substances, including contaminated stormwater, to be disposed at and around the Site." Compl. ¶ 71.

The City alleges that the Swickert family operated the Site as a scrap metal recycling operation facility from 1933 until December 2018. In 1970, the Swickert family incorporated Fox Valley Iron and Metal Corp., which was renamed BS Iron, Inc. in January 2019. Swickert Sr. is alleged to have run the operation as of May 1970, and Swickert Jr. is alleged to have managed the Site since 1994. Both allegedly negotiated contracts with persons and facilities to sell, transport, or otherwise arrange for the delivery of scrap metal and solid waste to and from the Site.

In January 2019, FV1 conveyed the Site to FV2. Since then, FV2 is alleged to have continued to stockpile, store or dispose of piles of scrap metal and other solid waste at the Site. The City alleges that these stockpiles continue to leak or release solid waste into the air, soil, groundwater, and surface water at the Site and that FV2's operations have exacerbated these leaks and releases.

The City has sued the defendants for environmental contamination at the Site under section 7002 of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972; section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607; section 505 of the Clean Water Act, 33 U.S.C. § 1365; and the Illinois common law of trespass and nuisance.

Both defendants have asserted counterclaims against the City. FV1 alleges in its counterclaim that the City was a customer of FV starting in 1970. FV1 alleges generally that the City disposed of hazardous materials at the Site. More specifically, FV1 alleges

"on information and belief" that the City and its contractors used the site to dispose of lead pipes, open car batteries, and other automotive parts that FV1 alleges were hazardous. See FV1 Countercl. ¶¶ 11-12. It alleges that the City is an "arranger" of hazardous waste disposal within the meaning of CERCLA, 42 U.S.C. § 9607(a), and that it is therefore liable for contribution, see FV1 Countercl. ¶ 18 & p. 42 (prayer for relief), though FV1 also alleges that the City is "jointly and severally liable," id. ¶ 17.

FV2's counterclaim includes similar, though not identical factual allegations. FV2 alleges that between 1954 and 1999 the City disposed of what FV2 alleges constituted "solid and hazardous waste" at the Site. FV2 Countercl. ¶ 12. This included scrap metal, crushed drums containing oil, tin, a refrigerator, and tanks. Id. ¶ 13. FV2 alleges that these constituted "solid waste, some of which was hazardous waste." Id. ¶ 14.

FV2's counterclaim includes three counts. Count 1 is a claim under RCRA; FV2 alleges that the City bears partial responsibility for any contamination at the Site. In Count 2, a claim under CERCLA, FV2 alleges that if the City prevails on its CERCLA claim against FV2, the City is liable for contribution because it arranged for disposal of hazardous substances at the Site. Count 3 is a state law trespass claim. FV2 alleges that the City has allowed contaminated stormwater and surface water to migrate onto the Site from a paved road adjoining the Site that is substantially higher than the Site and has no curbs or gutters. FV2 alleges that the City has done nothing to stop the water flow onto the Site.

## Discussion

Rule 12(b)(6) motions are determined by assessing the pertinent pleading—here, FV1 and FV2's counterclaims—under the plausibility standard established by *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To avoid dismissal under Rule 12(b)(6), a counterclaim must contain allegations that "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663. A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a complaint's sufficiency, a court accepts well-pleaded facts in the complaint but not conclusory allegations that simply parrot the elements of the claim. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Count 1 of FV1's counterclaim and count 2 of FV2's counterclaim assert claims under CERCLA sections 107(a) and 113(f), 42 U.S.C. §§ 9607(a) and 9613(f). In these claims, FV1 and FV2 allege that the City contributed to the alleged release or threatened release of hazardous substances from the Site. FV2's count 1 is a claim under section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), alleging the City disposed of solid waste or hazardous waste that may present an imminent and substantial endangerment to health or environment at the Site. FV2's count 3 seeks relief under the Illinois common law of trespass for damage caused to the Site from surface water that is allegedly migrating from Aurora Avenue.

1. **CERCLA claims**

The City's first argument for dismissal is, to put it mildly, hard to follow. It says that a party that has not been sued under CERCLA cannot seek contribution under that statute because a claim for contribution may be made only "during or after" an action under CERCLA section 107(a). But this is what shows why a claim for contribution *is* appropriate at this point; it is being asserted "during" the City's action under CERCLA

4

section 107(a).

In its reply, the City shifts ground, arguing that FV1's counterclaim is flawed because of its reference to joint and several liability. That is not a flaw requiring dismissal. It is clear from both FV1 and FV2's counterclaims that they are seeking contribution.

The City also challenges the factual sufficiency of the defendants' allegations that it is liable for contribution under CERCLA. FV1 and FV2 assert their claims under CERCLA sections 107(a) and 113(f). Section 107(a) provides that a person who arranged for disposal of hazardous substances that may present an imminent and substantial endangerment to health or the environment is liable for response costs. 42 U.S.C. § 9607(a). Section 113(f) allows a potentially responsible party to recover contribution for environmental cleanup expenses. *Id.* § 9613(f). To state a claim for CERCLA liability under this provision, a plaintiff must allege that: "(1) the site in question is a 'facility' as defined by CERCLA; (2) the defendant is a responsible party; (3) there has been a release or there is a threatened release of hazardous substances; and (4) the plaintiff has incurred costs in response to the release or threatened release." *Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 850 (7th Cir. 2008).

The counterclaims for contribution seek relief only if FV1 or FV2 are liable under CERCLA and thus, in effect, assume the defendants' liability under that statute. At issue is element 2.

FV1 and FV2 contend that the City is a responsible party under 42 U.S.C. 9607(a)(3), otherwise known as arranger liability, which "applies to an entity that arranges for disposal of hazardous material." *Burlington N. & Santa Fe Ry. Co. v.*

5

*United States*, 556 U.S. 599, 609 (2009).  The Supreme Court held in *Burlington Northern* that an entity qualifies as an arranger under section 9607(a)(2) when it "takes intentional steps to dispose of a hazardous substance."  *Id.* at 611.  Thus FV1 & FV2 must allege, and ultimately show, that the City intended to dispose of the material it sold to the Site.

The City argues that both FV1 and FV2 fail to allege facts that allow a reasonable inference of the City's intent to dispose of the material it sold to the Site.  Indeed, both FV1 and FV2's allegations regarding disposal are entirely conclusory.  *See* FV1 Countercl. ¶¶ 10-11; FV2 Countercl. ¶ 21.

FV1 argues that the City's intent to arrange for disposal can be inferred from the totality of the circumstances, including the nature of the material the City brought to the Site and the small size of the payments it received in return for the materials.  From this, FV1 contends, one can infer that the City intended disposal of the material.  One problem here is that neither counterclaim says anything about the payments; this information is included only with a brief filed in response to the motion to dismiss.  That aside, it is less than clear how the fact that the City was paid small amounts tends to show that it intended disposal of the material:  why would the owners of the Site pay to take in material simply to dispose of it?  One would think that a party (like the City) intending to dispose of material would pay to dispose of it, not be paid.  In fact an at least equally plausible inference from the payments to the City is that they indicate the City understood the material would be recycled, not disposed of.  Indeed, the Site is alleged to have been a scrap metal recycling operation, not a landfill or a dump.  The Court also notes that CERCLA defines disposal as "the discharge, deposit, injection,

dumping, spilling, leaking, or placing of any solid waste or hazardous waste" onto land or water which may release into the environment. 42 U.S.C. § 6903(3). Nothing in this definition suggests that the sale of hazardous material, in of itself, constitutes disposal.

When a party's allegations give rise to an "obvious alternative explanation," then the complaint can fall "short of the line between possibility and plausibility of entitlement to relief." *McCauley*, 671 F.3d at 616 (quoting *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544). Obvious alternative explanations make the plausibility determination "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* In this case, in which the underlying scenario is more complex, more information is required to state a plausible claim. *See id.* at 617. For this reason, the Court dismisses the sole count of FV1's counterclaim and Count 2 of FV2's counterclaim, with leave to amend.

**2.    RCRA claim**

Count 1 of FV2's counterclaim is asserted under section 7002(a)(1)(B) of RCRA, which imposes liability on one "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). FV2 alleges that the City handled solid or hazardous waste that was disposed of at the Site by transporting it there for disposal. To state a claim under this provision, "a plaintiff must allege (1) that the defendant has generated solid or hazardous waste, (2) that the defendant is contributing to or has contributed to the handling of this waste, and (3) that this waste may present an imminent and substantial danger to health or the environment."

*Liebhart v. SPX Corp.*, 917 F.3d 952, 958 (7th Cir. 2019). To impose liability for "handling" solid or hazardous waste, the plaintiff (in this case FV2) must allege, and ultimately show, that the defendant engaged in some "affirmative action" that caused contamination at the site. *Sycamore Indus. Park Assocs.*, 546 F.3d at 854.

FV2 alleges that the materials the City sold to FV1 were solid and/or hazardous waste and that the conditions at the Site may present an imminent and substantial endangerment to the health or the environment. FV2 further alleges that the City's sale of hazardous materials contributed to or is contributing to the alleged contamination at the Site.

FV2's RCRA claim, in contrast to the CERCLA claims discussed above, does not appear to require proof that the City had the intent to dispose of the material that it sent to FV1. The City argues that, *Burlington Northern*, discussed earlier with regard to the CERCLA claims, also applies to FV2's RCRA claim because the two statutes share the same definition of disposal. But the two statutes are not entirely parallel as applied in this case. Arranger liability under CERCLA, as noted earlier, requires "an entity to arrange for disposal of hazardous material." *Burlington Northern*, 556 U.S. at 609. But under RCRA, disposal is just one of several paths to liability: the provision states that "any person . . . who has contributed . . . to the past or present *handling, storage, treatment, transportation, or disposal* of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment" may be liable. 42 U.S.C. § 6972(a)(1)(B). So even if *Burlington Northern's* intent requirement applies to RCRA claims involving "disposal," the City could still be liable as a handler or transporter of solid or hazardous waste. And FV2's allegations are

8

sufficient to make such a claim plausible.

For these reasons, the Court declines to dismiss FV2's RCRA claim.

### 3. Trespass claim

Count 3 of Fox Valley 2's counterclaim is an Illinois state-law trespass claim against the City. A "trespass is an invasion in the exclusive possession and physical condition of land." *Lyons v. State Farm Fire & Cas. Co.*, 349 Ill. App. 3d 404, 411, 811 N.E.2d 718, 725 (2004). FV2 alleges that by failing to provide curb, gutter or other overflow measures on Aurora Avenue, a road bordering the Site, the City has allowed stormwater and other surface water to migrate onto the Site. FV alleges that this stormwater is contaminated.

In its motion, the City argues that FV2's factual allegations are insufficient to state a claim for trespass. The City also argues that it is immune from FV2's trespass claim under the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-103.

A trespass claim may be premised on the defendant having caused "a thing . . . to enter the land of another . . . through a negligent act." *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 826 (N.D. Ill. 2014). And water flowing onto adjacent land can constitute trespass. *Id.* (citing *Zimmer v. Village of Willowbrook*, 242 Ill. App. 3d 437, 610 N.E.2d 709 (1993)).

In its motion to dismiss, the City argues that Illinois law does not provide for liability for the natural flow of water from a dominant to a servient tract. "[T]he owner of the dominant or higher land has a natural easement over the servient or lower land to allow surface water to flow naturally off the dominant estate and onto the servient

9

estate." *Bollweg v. Richard Marker Assocs., Inc.*, 353 Ill. App. 3d 560, 573-74, 818 N.E.2d 873, 884 (2004). However, this right to increase waterflow or runoff is not unlimited; the increase must be reasonable. *See Templeton v. Huss,* 57 Ill. 2d 134, 141, 311 N.E.2d 141, 145-46 (1974).

FV2 alleges that the City has committed trespass by failing to mitigate or halt stormwater that naturally flows from its property onto the Site. FV2 seems to hint that when it built Aurora Avenue, the City caused an increase in stormwater draining onto the Site. But FV2 makes no allegation, or even an argument, regarding the unreasonableness of any such increase. Absent such allegations, FV2's trespass claim is deficient.

The Court also notes that FV2's allegation that the stormwater flowing from Aurora Avenue to the Site is contaminated is conclusory and unsupported by any factual allegations. This is an additional deficiency that should be addressed if FV2 attempts to amend its counterclaim.

The City also argues that it is immune from FV2's trespass claim under the Tort Immunity Act. The provision cited by the City states that "[a] local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 Ill. Comp. Stat. 10/2-103. The City contends that its alleged failure to provide curb or gutters amounts to failing to adopt an enactment.

As FV2 argues, section 2–103 provides no immunity to a municipality that fails to follow its own laws. *Salvi v. Village of Lake Zurich*, 2016 IL App (2d) 150249, ¶ 44, 66 N.E.3d 894, 909 (2016). FV2 contends that the City failed to follow its own law by not abiding by the Kane County Stormwater Management Ordinance, which requires

10

"appropriate and adequate provisions for Site Runoff control, especially when the land is developed with a large amount of impervious surface." See Kane County Stormwater Mgmt. Ord. (June 1, 2019). As indicated, FV2 alleges that the stormwater flowing from Aurora Avenue is causing flooding at the Site. Taking this is true, as required for a Rule 12(b)(6) motion, the City, by not providing gutters or curbs to mitigate the effects of the stormwater, is failing to follow its own law requiring it to make adequate provisions for runoff.

The City argues that the Ordinance only applies to developments defined as "a manmade change to land" and that this does not apply because failure to build curbs or gutters is not a development. But Aurora Avenue is plainly a manmade change to the land and thus would appear to fit within the Ordinance's definition of a "development." In sum, the City has not persuasively argued that the Tort Immunity Act requires dismissal of FV2's trespass claim for failure to state a claim.

## Conclusion

For the reasons stated above, the Court dismisses the counterclaim of defendants BS Iron, Inc., Robert Swickert, Sr., and Robert Swickert Jr. as well as counts 1 and 3 of the counterclaim of Fox Valley Iron and Metal, LLC, but otherwise denies the City's motion to dismiss [dkt. no. 31].

Date: August 30, 2021

_____
MATTHEW F. KENNELLY
United States District Judge